Good morning, ladies and gentlemen. We have four cases before the court this morning, one of which has been submitted on the briefs. The first case before the court is Sure Incorporated v. ClearOne, Inc., an appeal from the Patent Trial and Appeal Board. Ms. Addy, it's my understanding that you want three minutes for rebuttal? Yes, Your Honor. Okay. You may proceed. Thank you, Your Honor. Good morning. In this obviousness case, the parties dispute just one element, fixed beams. And the board recognized that the Kellerman reference disclosed fixed beams. That's at A20 of the record. And that should have been the end of the story because that's the only disputed element. However, the board legally erred by then relying on irrelevant teachings in Kellerman about fixed beam former design. I mean, the board found that Kellerman used the phrase fixed beams, but then the board expressly found that it didn't disclose fixed beams within the meaning of the patent that's being challenged, right? That's a difference. That is a difference, Your Honor. But when you look at the decision, two points here. When you look at the decision, the decision recognizes the fixed beam disclosure, but then in its analysis that starts on page 24, it refers to figure 13.8, and then it says that the next section is fixed beam former design. And it doesn't refer to the paragraph below figure 13.8 that deals with fixed beams, and it doesn't refer to the record at 709 to 711 dealing with fixed beams. And there are other places in Kellerman that describe fixed beams that it doesn't refer to. It only refers to this fixed beam former design. And so one point is because of the inconsistency in recognizing that they're fixed beams disclosed, but then not referring to them in the analysis and finding that they're not disclosed, that's a legal error. Well, as I understand what the board was saying was that it understood the claimed invention's reference to a fixed beam that the beams are fixed for the entirety of a teleconference. But for the prior art, when it refers to fixed beam, it's not talking about a beam being fixed for the entirety of a teleconference. It's only fixed with respect to a fairly short time interval in which from the perspective of the echo cancellation module, it looks fixed, but over the course of the entire teleconference, it's not actually fixed. There's some kind of change going on. Either the individual beams themselves are somehow being adjusted according to some function, or there's a different selection of a subset of different beams that are being used and employed during the teleconference. And so in either scenario, the beams are not fixed over the course of the entire teleconference. So fixed means, yes, it has a commonly understood meaning, but fixed as to what reference point. And for the board, they said the claimed invention is for the entirety of the teleconference, and for the reference, it's only perhaps with respect to how the echo cancellation module would see the beam. So could you speak with specificity to that? Yes, Your Honor. First of all, the claim construction out of the board was that it's fixed before a conference. And then the way the board applied that construction to Kellerman was that it had to be fixed during a conference. And in our claim construction section, we discussed that before a conference leaves ambiguity about what happens to the claim during a conference, and what happens to the beam at any time other than before a conference. Well, I mean, Kellerman's own testimony, I mean, it was your expert, but Kellerman's own testimony said, you know, it could be fixed for milliseconds. In other words, it's just barely fixed, and then it's not fixed. I mean, the board said that to try to call that a fixed beam is really expanding the scope of the reference. Two points, Your Honor. First of all, Kellerman is talking about this other embodiment that starts on 7-11 and goes to 7-12 about fixed beam former design. And the design is not in the claim. The claim only says fixed beam. If you look at 7-09 to 7-11, Kellerman is explicit in where he says that time-varying beams cannot be successfully tracked by AEC. And he says in his invention, fixed beams, the AEC acts only on the output of the fixed beam former. And that is the relevant disclosure. What he's talking about in his testimony is referring to fixed beam design. And also, it's taken out of context, because when you read his testimony in context, he says, that's not what I was describing. Look at 7-09 to 7-11 to see what I was describing. It's pretty odd to have the petitioner ask for a narrower construction. And I'm not sure that I completely understand why your much narrower construction matters to the ultimate resolution of this case. Your Honor, there are two reasons. First, it doesn't matter to the ultimate resolution of this case, because no matter what the construction is, fixed beams are the same in Kellerman and the disclosed and the 553 patent. However, you have to do a claim construction in order to make this decision. And there are downstream litigations dealing with both the 553 and its progeny. And so to the extent that you have to rule on claim construction in making this decision, district court judges may consider your decision. Even though it's Bree, it still may be considered, and that's why it's important. But just to clarify, I think you said, and the other side also said, and so that makes it undisputed, that the actual claim construction dispute here doesn't matter as to the question on appeal as to whether Kellerman teaches this limitation, right? No, Your Honor, it doesn't matter. The limitation is taught, and that's because Kellerman and the 553 patent teach the same problem and teach the same solution of the problem, to reduce complexity and to maintain audio quality. Both of them teach a fixed beam former connected to an AEC. So you'd be asking us, though, to basically give an advisory opinion that even that, which wouldn't be binding because it doesn't use the same standard as district courts. I disagree that it would be an advisory opinion simply because the court has to do a claim construction to reach invalidity. However, if the court doesn't have to do a claim construction to reach the decision on invalidity, then it doesn't have to happen. But I believe that the first step in invalidity is a claim construction. That is true, but if both parties agree that under either construction, the analysis is identical, we wouldn't necessarily have to pick between the two, right? I think that depends on the ultimate result because if you... No, I don't even think it depends on that. Actually, Your Honor, simply because you render a brie construction, other courts are going to look at that construction in dealing with the litigation. And while we all know that brie doesn't have to be the same as a Phillips construction, at this point, in this case, at this time, the difference between the two is not at issue. Okay. Your Honor, we asked about how Kellerman's time and the disclosure of time-invariant beams, and I believe you were concerned about whether the fixed beams are the same. And so Kellerman's disclosure of fixed beams, it can be found at 702 of the record in detail. It's also at 708, and as I've mentioned before, 709 to 711. But Kellerman is very specific that time-varying beam forming cannot be trapped satisfactorily with AEC in the first sentence. That's what Kellerman teaches. So it doesn't make sense that then the board would say, well, this doesn't teach fixed beam forming. Also, under figure 13.8, Kellerman refers to that figure and says that the AEC relies only on the time-invariant part. If you look at figure 13.8, Your Honor, you can see that from the fixed beam former, the M fixed beam signals go to the AEC, and there's nothing that discloses that anything else goes to the AEC. Finally, I want to address the- The beam design and control module affect what kind of beams go into the AEC? No, it affects the coefficients of the beams, and the testimony of the experts was- When you change the coefficients, though, of the beams, aren't you going to actually end up changing the character of the beams? Yes, but in talking about that in the beam design and control section, the Kellerman always uses permissive language may, and at one point it says it may occur during the initial training phase only. And the testimony of the experts is in agreement that during the initial training phase is before conference. You can see Dr. Loy's testimony at A2420 to A2421. Do you agree that if a different subset of beams gets selected during the course of a teleconference from, say, the initial number of subset of beams that are selected at the beginning of the teleconference, then if that is how Kellerman should be understood, then Kellerman isn't teaching fixed beams as the term fixed beams has been construed by the board. I disagree because I think Kellerman is teaching two different things. This is a hypothetical. If we understand Kellerman to be disclosing that, then is it your view that that still nevertheless meets the claim limitation of fixed beams as that term fixed beams has been construed by the patent board? No, Your Honor, it doesn't. Actually, I think that's where the construction of fixed beams is hard to understand and ambiguous because it just says fixed before a conference. And if you rule that the beams can be changing during a conference, then that still fits under the claim construction because the claim construction provided by the board says nothing about what happens after before a conference. It just says before a conference. And so in an adaptive beam situation, Your Honor, it is fixed before a conference, but then during a conference, the adaptive beam moves around and adapts to the signal situation. And that was explicitly excluded in the prosecution history. The prosecution history at A-10-12 of the record, clear one said we are not, fixed beams does not mean adaptive and does not mean adjustable. The disclosure that's in that prosecution history says they're not steered beams. That's different than the type of changeable beams that Kellerman disclosed. That's correct. And the parties, I think, agree that steered beams is the adaptable, adaptive type of beams. But if you read the description or the statement that the patentee makes at A-10-12, he says they're not adjustable either. And adjustable beams are when you're manually changing the beams instead of adaptive, where it's moving around to detect who's talking at a certain time. So what's the difference between a design and the operation of an adaptive system? Well, there are two different embodiments in Kellerman. And Kellerman says in the first one, we're talking about fixed beams. And then Kellerman says in the second one, we're talking about ways that you can optimally adjust these fixed beams. You don't have to do it during a conference. And that doesn't change anything in the earlier discussion. He says you can do it only during the initial training phase. And so that's the difference. And I think it's in the discussion in Kellerman. So in Figure 13.8, when I'm looking at beam design and control, am I also considering that that's the adaptive system? It's interesting because Kellerman says uses adaptive, but he uses adaptive in a different way than Kajala, which was the prior art reference in the prosecution history. So Kellerman's adaptive is really talking about adjusting the beam coefficients. But again, I want to reiterate that it says that that can be done optionally. And Kellerman is clear that the less that you adjust it, the better, the first part saying no adjustment. If you have no more questions, I'll reserve my time. Okay, thank you. Good morning, Your Honors, and may it please the court. The only question Your Honors need to answer on this appeal is whether substantial evidence supports the board's factual finding that the beam former in Figure 13.8 of Kellerman does not have parameters that remain fixed throughout a conference. And there is copious evidence to support that conclusion. That's the construction that the district court ultimately gave, but where is the support for the board's conclusion that they have to be fixed before the conference, or the parameters for the beam have to be fixed before the conference? Well, that is the board's construction, number one. The support for that comes from the specification of the 553 patent. Reading that, both the district court and the board read it to understand correctly that the reason why the beams are fixed is to prevent the AECs from having to readapt to changing beams. And the time when that matters is during a conference, and it doesn't matter outside of a conference. And so that's the basis for the construction. I also want to address the... So your view is that the board's construction is really saying they're set before the conference and then remain fixed during the conference? Exactly, Your Honor. It's just different ways of saying the same thing. And in fact, that is the way the board articulated its construction in terms of let's fix it before a conference. That's what the board's construction is. But as applied, the board applied the construction as, okay, if it's fixed before the conference, it's unchanging during the conference. It's really the same thing expressed in two different ways. So what's your response to Ms. Addy's contention that aspects of the construction were actually given up during prosecution history? Well, during the prosecution of 553 patent, the Kijala reference was certainly distinguished. Kijala teaches continuous steering of beams, adaptive beam forming. And the applicants simply noted that that is one example of beam forming that is not fixed. That was certainly distinguished. That's all. That's all you can read from the prosecution history. So there are two ways to look at Kellerman. The first is open the reference. Kellerman structurally is pretty close to the claim convention, right? It's doing the beam former block first. Then it's doing the acoustic echo cancellation second. And in the beam former block, it's taking all the signals from all the different microphones and then making a certain number of beams that's less than the number of microphones. It's not just making a single beam, for example, right? Correct, Your Honor. So all of these elements are just like your claim convention. True, but the one distinction, the patentable distinction, is that Kellerman does not use fixed beams as the 553 patent. It says fixed beams, but what does it mean? What it means in the Kellerman... There's a statement in Kellerman that says, you know, this system can be used for initial trial phase setup, or the system can be used continuously. And I assume continuously is in reference to over the course of the operation during a teleconference. Sure, like Kajala. So then it comes down to whether Kellerman is talking about a second embodiment where it's only operating and creating these beams during the initial trial phase, which sounds like something that you do during the setup for a conference, i.e. before a conference. So why does the board get to read that in the opposite? Because it was Schur's burden below to show that the initial training phase would happen before a conference begins, and they failed to do that. In fact, Kellerman is silent as to when this initial training phase occurs, and there is an admission from Schur's counsel below during the oral argument to that effect. And you can see that on appendix page 8996. It's on lines 13 and 14 of that page. And that was critical to the board's reasoning. And there's confirmation of that elsewhere in the record. I want to direct your honor to appendix page 6021. This is testimony from Dr. Kellerman during one of his depositions when he was explaining exactly what we're talking about. And he said, quote, we would initially run an adaptive beam former which picks our two voices mainly, right, and learns the background noise statistics. And then we would use it as a fixed beam former for the rest of the conference. What he's clearly saying here is that this initial training phase that determines what the beam should be happens after the conference has begun. Like maybe the first couple minutes of a conference? It's probably more like the first few seconds. I mean, depending on the technology and how well the algorithms perform, it could be fractions of a second. But the point is, it is definitely happening after the conference has begun because it has to. It has to use the talker's voices to do that initial adaptation. One important point here is that when we're talking about adaptive systems, they adapt their coefficients, their parameters, based upon use, operation. There's not a separate design and operation of an adaptive filter. So if a person comes in into the room in the middle of a conference call and sits down and speaks, then the adaptive process starts all over? It could, yes. Now, in the 553 patent, its system would handle that differently because it uses fixed beams. And a different fixed beam, which probably had not been utilized before, would pick up that new talker in the position where he or she is seated. And sometimes when that person is talking, that fixed beam would be selected. How do you understand Kellerman to handle that exact same situation? In Kellerman's situation, because the beams are fundamentally adaptive but just held fixed for brief periods of time to allow the AECs to converge to their proper coefficients, what would happen is one of the beams, we don't know which one, would adapt to find the new speaker. And during that time, there would be leak-through in the AECs. But then Kellerman would hold the beams fixed while the AECs adapt to that new situation. Would it select a new subset of beams? It could, very possibly. Yes. And if the selection of the subset is during the conference, it's a change in the beams. When you say it could do this or it may do that, it makes me a little nervous as to what actually the reference teaches and discloses to one of skill in the art. Sure, Your Honor. So the board never found affirmative disclosure that Kellerman keeps the beams fixed for the entire duration. And yes, granted, there are statements in Kellerman that discuss, using permissive language, the time-varying nature of its beams. But the key thing is Kellerman never affirmatively says, keep the beams fixed for the entire conference. It was Schur's burden to prove that that is disclosure in Kellerman, and they couldn't do it. The board reasonably found that that disclosure is not there. What do we do with the fact that, you know, once apparently they decided that Dr. Kellerman was going off the reservation, they got a new expert and the new expert said, well, let's really look at what one of skill in the art would understand from this disclosure, rather than having someone try to teach us what they might have been thinking at the time. And that new expert expressly said that one would understand that there are periods of use of fixed beams. But not periods that are coextensive with the entire duration of the conference. And you hit on an important point, Judge O'Malley. They threw Dr. Kellerman under the bus for two reasons. He said two things highly damaging to Schur's case. First, he testified in his deposition that when the word fixed is used, it is always in reference to some observation interval. And the observation interval that is relevant to the Kellerman reference is on the order of seconds. And he said that, for example, he said at page 5993, quote, time invariant and fixed always is associated to a time interval that you consider. So nothing is forever. So time invariant or fixed beam forming may be fixed for only a certain period of time, say 10 seconds, comma, 100 milliseconds. And that could just be a logical explanation that whenever you have something that's time invariant, it could be time invariant for two seconds. It could be time invariant for, you know, two days. But the real question is, in the use of these beams, did it actually teach time invariance throughout the conference? No, the Kellerman reference does not. That's why the board scoured the reference to look for some disclosure of holding the beams fixed for the entire conference. And they couldn't find that. And there's reasonable support for that. It's in Kellerman's testimony, Mr. Kellerman, the man, Dr. Kellerman. It comes from the document itself. And it also comes from the testimony of Dr. Loy, Claire One's expert, who provided testimony about how one of skill in the art would read the Kellerman reference. And his reasoning tracks almost exactly the board's reasoning. So does Kellerman steer the beams, much like the prior art that Claire One distinguished in its prosecution history? Certainly. Either beams are selected and the selection happens or changes during the conference, or the beams are steered and adapted during the conference. So the beams respond to the background noises and the voices? Yes, they do. It's adaptive beamforming. Fundamentally, Kellerman is about adaptive beamforming and how to integrate AEC into a time-varying beamforming. And that's the default for Kellerman. We know that because the relevant section with figure 13.8 is section 13.5 beginning on page 709. And it refers to integration of time-varying beamforming and AEC. Time-varying beamforming is described in the immediately preceding paragraph on that same page, 709. And there, Dr. Kellerman, as the author, is talking about the fact that you have signal-dependent, time-varying beamformers. That's the context. He even says that, look, to make this work well for the AECs, you have to hold the echo path model constant for a sufficiently long time. And if you look at the diagram on the next page, especially part C, you can see that adaptation is enabled in this example of five and a half seconds of a conference. It's enabled for half a second, and the beamformers are held fixed for the other five seconds. And it's during the time when the beamformers are held fixed that the AEC adaption is enabled. Is it your understanding that when Kellerman talks about how he can monitor the fixed beams and learning of optimum beamformers for deciding upon the G function, and that can be carried out during initial training phase only, that we're just talking about those first few milliseconds? And so everything else that you're talking about, about during the course of the teleconference, those things are for a separate independent teaching in Kellerman? It's not relevant at all to this particular disclosure embodiment about the initial training phase only? It is relevant. So really all we have to really understand and focus and zero in on is the initial training phase only embodiment? I think that's one of the stronger embodiments for sure. But it falls short, because as we've discussed, the initial training phase likely happens during a conference. At least the initial start of a conference for milliseconds, a few seconds, who knows how long. But it doesn't matter how long, it's during a conference. And then the other important finding that the board found is that even assuming, for the sake of argument, that this initial training phase happens before the conference, the board could find no evidence in Kellerman that the beams would remain fixed throughout the duration of the conference. And that's a finding that the board made, and there's substantial evidence in support of that. I think your time is up. Thank you, your honors. I'll give you two minutes for rebuttal. Thank you. I have three points, hopefully I can make them. First, counsel focused on could and may repeatedly in his discussion. And that's because everything in the design section of Kellerman is optional. And he describes it as could or may or can. Secondly, counsel argues that Kellerman's system is a time-varying system. However, that's interesting, because so is the claimed 553 system. Here's where it goes. There's a time-invariant beam former in both. There's also an AEC that's time-varying. There's also in the claim, it talks about the selection process at the multiplexer. And in the Kellerman, it talks about voting. That's time-varying. However, and all of those things are not disputed. They're present in Kellerman and in the 553 patent. We're only talking about the time-invariant beam former. And Kellerman is specific that you can't track time-varying beams with the AEC. So you're using time-invariant. With respect to the claim construction, the claim itself has no timing restrictions. And the only construction that deals with the prosecution history, and it deals with what clear one was trying to distinguish, is a construction that recognizes that the claim is not, that fixed beams are not adjustable. Your Honors, this appeal turns on one issue. And that issue is whether Kellerman discloses fixed beams. It does. It does at page 709. It does at figure 13.8. It does from 709 to 711. And that's the end of the story. Thank you, Your Honors. Thank you.